IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | | |
|---|---|---|
| GARY MAY, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:13-22417 |
| | ) | (Criminal No. 5:12-0050) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Movant filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 on August 30, 2013. Document No. 46. Having fully considered Movant's claims for relief under Section 2255, the record in the underlying criminal proceeding and the applicable law, the undersigned finds that Movant's claims are without merit and hereby respectfully recommends that his Section 2255 Motion be denied.[1]

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 22, 2012, the United States filed an Information charging that between February, 2008, and April 5, 2010,[2] while employed as a Mine Foreman and Mine Superintendent at the Upper Big Branch [UBB] mine in Raleigh County, West Virginia, Movant conspired with others to defraud the United States, the Department of Labor and the Mine Safety and Health Administration by interfering with the administration and enforcement of mine safety and health

---

[1] An evidentiary hearing is unnecessary under 28 U.S.C. § 2255(b) because it is clear that Movant is not entitled to relief under Section 2255.

[2] On May 5, 2010, 29 coal miners tragically died in a massive explosion at the Upper Big Branch mine.

laws in violation of 18 U.S.C. § 371. United States v. May, Criminal No. 5:12-0050, Document No. 1.[3] On March 8, 2012, the Court noted the appearance of Attorney Tim C. Carrico in representation of Movant. Represented by Mr. Carrico, Movant entered a plea of guilty to the charge on March 29, 2012.[4] Id., Document No. 16. The District Court sentenced Movant on January 17, 2013, to a 21 month term of incarceration and a three year term of supervised release. The Court also imposed a $20,000 fine and a $100 special assessment. Id., Document No. 40. Movant did not appeal his conviction or sentence.[5]

On August 30, 2013, Movant filed the subject Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Document No. 46. Movant contends that Mr. Carrico had

---

[3] Performance Coal Company, Inc., a wholly owned subsidiary of Massey Energy Company, operated the Upper Big Branch mine. After the explosion, Massey Energy Company was acquired by Alpha Natural Resources [Alpha].

[4] At Movant's plea hearing, the District Court inquired of Movant as follows respecting Mr. Carrico's representation (Document No. 18, p. 4.):

> THE COURT: Do you believe you've had adequate time to discuss your case with your attorney, Mr. Carrico?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And has been able to advise you about how to best proceed in this matter?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Are you completely satisfied with the legal representation you've received from him?
>
> THE DEFENDANT: Yes, Your Honor.

[5] By his written plea agreement, Movant agreed to waive his right to challenge his guilty plea and conviction on appeal and under 28 U.S.C. § 2255 but his agreement to waive his right "shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel." *United States v. May*, Criminal No. 5:12-0050, Document No. 12, ¶ 12.

an actual conflict of interest and was ineffective in representing him. Movant contends that Massey Energy Company [Massey] retained and paid Mr. Carrico to represent him and Alpha Natural Resources continued the arrangement after it acquired Massey Energy Company. Id., p. 3. Movant contends that Mr. Carrico would not let him testify about Massey's, its President's and others' culture and policy of providing notice in advance of the arrival of mine inspectors at the UBB mine. Id. Movant claims that while representing him Mr. Carrico also often conferred with Massey's and Alpha's general counsel and the attorney of Massey's owner, Mr. Blankenship. Id., p. 4. Movant further contends that Mr. Carrico represented Mr. David Hughart,"for crimes committed at Massey" at the same time Mr. Carrico was representing Movant "and withdrew his representation of him just four days before [Movant's] sentencing hearing held on January 17th, 2013. This was due to an undisclosed conflict of interest."[6] Id., p. 5. Movant claims that Mr. Blankenship's attorney signed a Joint Defense and Confidentiality Agreement in September, 2010, and Mr. Carrico "had him sign" it thereafter. Movant states that he"withdrew from that agreement upon cooperating with the government." Id., p. 8. Movant cites a June 12, 2012, email from Alpha's general counsel to Mr. Carrico indicating that Mr. Blankenship's attorney "will likely prepare most of the pleadings since they need to be consistent and have you review and sign off if they are appropriate." Id. Movant contends that Mr. Blankenship's attorney therefore provided "strategic input" into the defense of the

---

[6] Mr. Hughart was charged by Information filed on November 28, 2012, in *United States v. Hughart*, Criminal No. 5:12-0220, with defrauding the United States in violation of 18 U.S.C. § 371 by interfering with the administration and enforcement of mine safety and health laws. The Information alleged that Mr. Hughart was President of Massey's Green Valley resource group which operated the White Buck Mines in Nicholas County, West Virginia. The record indicates that Mr. Carrico filed a Motion to Withdraw as Counsel of Record on January 8, 2010, claiming a "conflict of interest preventing further representation"(Document No. 5.) and the undersigned granted Mr Carrico's Motion on January 10, 2013 (Document No. 7.).

charges against him. Movant then claims that Mr. Carrico prevented him from testifying at his plea hearing about Massey's corporate policy of providing advanced notice of mine inspections. Id. Movant further claims that he advised Mr. Carrico that information in the Information about the deactivation of methane monitoring equipment was incorrect and Mr. Carrico "did not object to it or ask to have it redacted from the sentencing documents." Id., p. 9. Movant insinuates that Mr. Carrico, aligned with attorneys for Massey, Alpha and Mr. Blankenship, failed to do so to protect Massey, Alpha and Mr. Blankenship by making him "the fall guy." Id. Movant makes the same claim with respect to original charges that he ordered a subordinate to falsify UBB mine log books. Id., p. 10. Because Mr. Carrico did not object to the false information about the methane monitor and the falsification of log books, Movant claims, the District Court relied upon the false information in sentencing him. Id., pp. 9 and 10. Movant makes the same claim with respect to paragraphs 3(d) and (e), 11, 12 and 13(d) and (e) of the Information which were incorporated into the Plea Agreement and referenced in the Stipulation of Facts. Finally, Movant claims that at a meeting with an FBI agent and an Assistant United States Attorney, he spoke about how often Massey knew when its mines would be inspected (90%) and where specifically inspectors were going (50%) and Mr. Carrico required the others to leave the room and told Movant that he should only speak about the times when Massey did not know when its mines would be inspected (10%). Movant claims that he thought Mr. Carrico was acting together with Mr. Blankenship's attorney attempting to protect Massey and Mr. Blankenship at his expense. Id., p. 11. Movant requests immediate release pending an evidentiary hearing and other relief. Id., p. 13. Movant attached copies of docket information from four civil matters in the District Court indicating the attorney representing Mr. Blankenship and a copy of the above referenced email.

On September 11, 2013, Movant filed an Amended Pleading to Movant's Motion for Relief Pursuant to 28 U.S.C. § 2255. Document No. 51. Movant states that he has learned that Mr. Blankenship's attorney is married to the vice-president and general counsel of Alpha. Movant asserts that "[t]he appearance of impropriety further taints the public's perception of justice and fair play and makes one question just whose interests the . . . defense team were actually defending." Second, Movant refers to an email which he sent to Mr. Carrico in January, 2013, indicating that he wished to challenge false information contained in the plea agreement and stating that Mr. Carrico "failed to challenge these false facts in the interest of protecting Massey Energy, Alpha Natural Resources and Don Blankenship; none of whom were his clients."

On October 2, 2013, Movant filed a Second Motion to Supplement his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. Document No. 52. By his Motion, Movant places a copy of Mr. Carrico's bills for services rendered and transmittal letters to Massey and Alpha from July 1, 2010, to August 9, 2013, in the record in support of his claim that Mr. Carrico represented him though he had a conflict of interest.

## DISCUSSION

**Movant's Conflict of Interest Claim.**

A defendant in a criminal case is entitled to effective representation of counsel under the Sixth Amendment of the United States Constitution. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Generally, ineffective assistance of counsel claims involve defendants' assertions that their attorneys' performance in representing them in criminal proceedings was deficient and prejudice resulted. Id. Such claims can also involve defendants' assertions that their attorneys had actual or potential conflicts of interest which adversely affected their

performance. Strickland v. Washington, 466 U.S. 668 at 692, 104 S.Ct. at 2067 ("Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interests adversely affected his lawyer's performance.'" quoting Cuyler v. Sullivan, 446 U.S. 335, 350 and 348, 100 S.Ct. 1708, 1719 and 1718, 64 L.Ed.2d 333 (1980).); Woods v. Georgia, 450 U.S. 261, 268 - 270, 101 S.Ct. 1097, 1102 - 1103, 67 L.Ed.2d 220 (1981)(noting that "Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise. One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest. Another kind of risk is present where . . . the party paying the fees may have had a long-range interest in establishing a legal precedent and could do so only if the interests of the defendants themselves were sacrificed."); United States v. Urutyan, 564 F.3d 679, 686 - 687 (4th Cir. 2009)(affirming District Court's decision to disqualify defense attorney finding a "serious potential conflict" as the attorney was paid by a third party and therefore was possibly "acting as an agent of the third party who has interests which are potentially in conflict with those of his client . . . ."(footnotes omitted).); United States v. Brodnick, 710 F.Supp.2d 526, 560 - 562 (S.D.W.Va. 2010) (District Judge Berger). But "payment of legal fees by a third party does not automatically rise to the level of a conflict of interest." United States v. Tobon-Hernandez, 845 F.2d 277, 281 (11th Cir. 1988); Flood v. United States, 2012 WL 2025255 at *6 - 8 (D.Utah); Garcia v. United States, 2010 WL 4960314 at *8 - 9 (S.D.Fla.). "[T]he Sixth Amendment right to conflict-free representation, like the right to counsel itself, may be the subject of a waiver. * * * Of course, to be effective, such a waiver must be

knowing, intelligent, and voluntary." United States v. Swartz, 975 F.2d 1042, 1048 - 1049 (4th Cir. 1992)(Citations omitted.). "[T]rial courts, when alerted by objection from one of the parties, have an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." Wheat v. United States, 486 U.S. 153, 161, 108 S.Ct. 1692, 1698, 100 L.Ed.2d 140 (1988). "The District Court must recognize a presumption in favor of [defendant]'s counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." Wheat v. United States, 486 U.S. at 164, 108 S.Ct. at 1700. "[T]he district court must be allowed substantial latitude . . . not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat v. United States, 486 U.S. at 163, 108 S.Ct. at 1699. "To meet [its] obligation, a court that learns of a possible conflict 'must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all.'" United States v. Rogers, 209 F.3d 139, 143 (2nd Cir. 2000), quoting United States v. Levy, 25 F.3d 146, 153 (2nd Cir. 1994). An actual conflict of interest exists when an attorney's and a defendant's interests are divergent with respect to a material factual or legal issue or a course of action. Cuyler v. Sullivan, 446 U.S. 335, 356, 100 S.Ct. 1708, 1722, 64 L.Ed.2d 333 (1980)("An actual conflict of interest negates the unimpaired loyalty a defendant is constitutionally entitled to expect and receive from his attorney."); United States v. Blau, 159 F.3d 68, 74 (2nd Cir. 1998), and United States v. Levy, 25 F.3d at 155, quoting Winkler v. Keane, 7 F.3d 304, 307 (2nd Cir. 1993); see also United

States v. Gonzales, 105 F.Supp.2d 220, 222 - 223 (S.D.N.Y. 2000)("An actual conflict is one that is so 'severe' that 'no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation.'" quoting United States v. Levy.) "An attorney has a potential conflict of interest if the interests of the defendant *could* place the attorney under inconsistent duties in the future." United States v. Jones, 381 F.3d 114, 119 (2nd Cir. 2004), citing United States v. Kliti, 156 F.3d 150, 153 fn. 3 (2nd Cir. 1998); United States v. Perez, 325 F.3d 115, 125 (2nd Cir. 2003)("If the court discovers no genuine conflict, it has no further obligation. At the other end of the spectrum, if the court determines that counsel has an actual conflict that is so severe as to indicate per se that the rendering of effective assistance will be impeded, or is analogous to such a conflict in 'breadth and depth', the court must . . . disqualify counsel. And if, between these two extremes, the court determines that the 'attorney suffers from a lesser [actual] or only a potential conflict,' then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice."(Citations omitted.)).

In this case, it is not evident that Mr Carrico had an actual conflict of interest and actively represented conflicting interests. It is clearly not enough that Massey and Alpha paid Mr. Carrico's fees and expenses for representing Movant or that he conferred with counsel for Massey and Alpha about the criminal proceedings. There must be some evidence that he acted in some way to protect or advance the interests of Massey and Alpha at Movant's expense. Nothing in the record even remotely indicates that Mr. Carrico did so. Rather, it clearly appears that Mr. Carrico effectively represented Movant in the context of the charges that Movant engaged in a conspiracy in violation of 18 U.S.C. § 371. Under conspiracy law, a conspirator is liable for the conduct of all co-conspirators which was in furtherance of the conspiracy and reasonably foreseeable to him.

Pinkerton v. United States, 328 U.S. 640, 646 - 647, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); United States v. Bollin, 264 F.3d 391, 422 (4th Cir. 2001)("[A] member of a conspiracy . . . is vicariously liable for the reasonably foreseeable conduct of his co-conspirators, both substantively and at sentencing."). In the context of the charges that Movant engaged in a conspiracy in violation of 18 U.S.C. § 371, Movant's statements under oath at his plea hearing in denial of his actual involvement in alleged conspiratorial conduct and overt acts might have prompted the United States to bring further charges of perjury and/or obstruction of justice against him. Additionally, such statements during meetings and debriefing with the United States' attorneys and investigators might well have resulted in the District Court's conclusion that Movant did not clearly demonstrate a recognition and affirmative acceptance of responsibility and disallowance of credit to Movant for it at sentencing. Mr. Carrico skillfully managed Movant's defense avoiding circumstances which would have potentially impacted him negatively and advocating for Movant when it appeared it might have a positive impact. For example, at sentencing the United States' attorney acknowledged that Movant "provided cooperation to the Government, and the Government believes that that cooperation may prove to be quite significant as related investigations continue." Document No. 43, p. 12. The United States' attorney then asserted that by his cooperation, Movant should receive credit for acceptance of responsibility. Id. Mr. Carrico then sought to make a record of the extent of Movant's cooperation and the District Court held an *in camera* hearing. Id., pp. 13 - 17. Mr. Carrico then requested that the Court "consider a variant sentence". Id., p. 19.[7]  Clearly Mr. Carrico acted with one purpose in

---

[7] The *in camera* discussion respecting Movant's cooperation was not transcribed and the undersigned therefore has not considered it. Movant has filed a Motion to Unseal Transcript intending to refer to the discussion in these Section 2255 proceedings (Document No. 45.), and the District Court has granted it (Document No. 53.). Though the undersigned has not considered the *in camera* discussion, the undersigned will file this Proposed Findings and Recommendation. The

9

mind – protecting Movant's interests. Nothing in the record indicates that Mr. Carrico acted to benefit Massey, Alpha or Mr. Blankenship at Movant's expense. For these reasons, the undersigned finds that Movant's claim that Mr. Carrico represented conflicting interests is without merit.

### Movant's Ineffective Representation Claim.

When a movant claims ineffective assistance of counsel as a basis for seeking relief under Section 2255, the burden is on the movant to prove that his trial attorney failed to render effective assistance. Strickland v. Washington, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). In Strickland, the Court adopted a two-pronged test for determining whether a defendant received adequate assistance of counsel. Id. The first prong is competence. The movant must show that the representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687 - 691, 104 S.Ct. at 2064 - 2066. There is a strong presumption that the conduct of counsel was in the wide range of what is considered reasonable professional assistance, and a reviewing Court must be highly deferential in scrutinizing the performance of counsel. Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065 - 2066.

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. . .. [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

Strickland, 460 U.S. at 690, 104 S.Ct. at 2066. The Court will not second-guess an attorney's tactical decisions unless they appear unreasonable in view of all of the circumstances. Goodson v. United

---

fact that Mr. Carrico pressed for the *in camera* discussion is germane to Movant's claims of ineffective assistance of counsel as it demonstrates Mr. Carrico's effective representation. What was said during the *in camera* discussion has little, if any, relevance.

10

States, 564 F.2d 1071, 1072 (4th Cir. 1977). The second prong is prejudice. The movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; Hill v. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). An attorney's mere mistake, ignorance or inadvertence does not suffice for proof of ineffective assistance. Murray v. Carrier, 477 U.S. 478, 106 S. Ct. 2639, 2645-46, 91 L.Ed.2d 397 (1986)("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in Strickland v. Washington, . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default.") The movant must therefore show (1) that his attorney's performance was constitutionally inadequate, i.e., that he committed errors so serious that his performance "fell below an objective standard of reasonableness" and (2) that his attorney's performance prejudiced him such that it rendered the proceeding fundamentally unfair or made the result unreliable. Strickland, 466 U.S. at 687 - 88, 104 S.Ct. at 2064 - 2065; Fitzgerald v. Thompson, 943 F.2d. 463 (4th Cir. 1991), cert. denied, 502 U.S. 1112, 112 S.Ct. 1219, 117 L.Ed.2d 456 (1992).

It is further not evident that Mr. Carrico was ineffective in representing Movant. Movant complains that Mr. Carrico would not let him testify about Massey's, its President's and others' culture and policy of providing notice in advance of the arrival of mine inspectors at the UBB mine. Movant also complains that Mr. Carrico did not object to the consideration of false information about the methane monitor and the falsification of log books in paragraphs 3(d) and (e), 11, 12 and 13(d) and (e) of the Information which were incorporated into the Plea Agreement and referenced in the Stipulation of Facts and in District Court proceedings culminating in his sentencing.

Paragraphs 11 and 12 of the Information state that as part of the charged conspiracy, Movant and others "did falsify and authorize and cause the falsification of examination record books at UBB" (Paragraph 11.) and "did alter, and authorize and cause the alteration of, the ventilation system of the Mine to direct additional air to the area where the inspection was to take place, in order to conceal and cover up the quantity of air that normally reached that area of the Mine."(Paragraph 12.) Paragraphs 13(d) and (e) state as "Overt Acts" that Movant "ordered a known person to falsify examination record books by omitting from the record books a hazardous condition, to wit, water of a depth that made it unsafe to travel a certain area of the Mine" and "knowing that MSHA was about to sample the level of respirable dust in a certain area of the mine, surreptitiously redirected additional air to that area of the Mine to conceal and cover up the quality of air that would have reached that area of the Mine under normal conditions." The Information further stated as an "Overt Act" that in about February, 2010, a methane monitor on a continuous mining machine caused the machine to cease operating and Movant "caused and ordered the electrical wiring in the methane monitor to be altered to defeat the legally mandated automatic shut-off mechanism, allowing the continuous mining machine to be operated for several hours without a functioning methane monitor." At Movant's plea hearing, the United States' attorney stated that witnesses would testify that Movant "personally participated at times in concealing and covering up violations of health and safety laws when warned of MSHA inspections", "ordered subordinates of his to falsify legally mandated examination books that record conditions at the mine" and "ordered subordinates of his to alter, rewire the legally mandated methane monitor on a continuous mining machine so that the machine could keep operating even though the monitor was not functioning properly." The Court then inquired of Movant whether what the United States' attorney stated was "substantially correct"

and under oath Movant responded "Yes, Your Honor." Document No. 18, p. 19. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221 - 222 (4th Cir. 2005). Assuming that Mr. Carrico did indeed prohibit Movant from testifying and making statements about Massey's and its President's culture and policy of providing advanced notice of mine inspection, it is clear that Mr. Carrico did so in Movant's interest. As stated above, such testimony and statements at the plea hearing or in meetings and debriefing with the United States' attorney and investigators could have been detrimental to Movant's interest. Mr. Carrico then took the opportunity to present such matters at sentencing in the context of discussing Movant's cooperation. Mr. Carrico represented Movant competently. He was not ineffective in these regards as Movant claims. Respecting his claims that Mr. Carrico did not object to the District Court's consideration of "false information", his claim is frivolous in view of his acknowledgment under oath at his plea hearing of the truth of such matters. For these reasons, the undersigned concludes that Movant's claim of ineffective assistance of counsel is without merit.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Movant relief under 28 U.S.C. § 2255 (Document No. 46.), and remove this matter from the Court's docket.

Movant is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to

the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, Movant shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of these Proposed Findings and Recommendation within which to file with the Clerk of this Court, written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208, 104 S. Ct. 2395, 81 L. Ed. 2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Berger, and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Movant who is acting *pro se*.

Date: October 17, 2013.

R. Clarke VanDervort
United States Magistrate Judge