**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

GARY MAY,

Petitioner,

v. CIVIL ACTION NO. 5:13-cv-22417
(Criminal No. 5:12-cr-00050)

UNITED STATES OF AMERICA,

Respondent.

**MEMORANDUM OPINION & ORDER**

The Court has reviewed the Petitioner's *Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255* (Document 46) filed on August 30, 2013, and brought on the grounds, *inter alia*, that his counsel, Tim Carrico, was ineffective. By *Standing Order* (Document 49) entered on September 4, 2013, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636. On October 17, 2013, the Magistrate Judge submitted a *Proposed Findings and Recommendation* (PF&R) (Document 55) wherein it is recommended that this Court deny the Petitioner's § 2255 motion. Objections to the Magistrate Judge's PF&R were due by November 4, 2013, and Petitioner timely filed his objections on November 4, 2013 (Document 58).

## I. FACTUAL AND PROCEDURAL HISTORY

Magistrate Judge VanDervort's PF&R sets forth in detail the procedural and factual history surrounding the Petitioner's motion. The Court now incorporates by reference those facts and

procedural history, but in order to provide context for the ruling herein, the Court provides the following summary.

Petitioner Gary May was sentenced on January 17, 2013, to twenty-one (21) months of imprisonment, to be followed by three years of supervised release.[1] On August 30, 2013, the Petitioner, *pro se*, filed his *Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255* (Document 46).[2] The Petitioner alleges that his counsel, Tim Carrico (Carrico), was ineffective for several reasons. First, the Petitioner maintains that Carrico had a conflict of interest because Massey Energy (Massey), Petitioner's employer, retained Carrico and paid the legal bills to defend the Petitioner against a federal conspiracy charge, while Massey, at the same time, was defending employees in upper level management, including CEO Don Blankenship, from potential criminal charges arising out of the same incident.[3] The Petitioner also argues that his attorney represented David Hughart, another individual employed by a Massey subsidiary, Green Valley Coal, who was ultimately charged with a similar offense.

To support the conflict of interest claim, the Petitioner alleges that Carrico constantly conferred and planned strategy with Massey's, and later Alpha's, general counsel, as well as personal counsel for Don Blankenship. (Document 46 at 4.) The Petitioner believes his attorney had a clandestine relationship with attorneys who represented Massey, Alpha Natural Resources and Don Blankenship, and that this relationship "further muddie[d] the conflict of interests waters." (Document 51 at 1.) The Petitioner also contends that he was not permitted to testify or

---

1 The Petitioner was charged by Information with conspiracy to defraud the United States in violation of 18 U.S.C. § 371.

2 The Petitioner attached to his motion several civil cover sheets in unrelated cases as well as an email report dated August 9, 2013.

3 On May 5, 2010, 29 miners died in an explosion at the Upper Big Branch mine (UBB), where Petitioner worked as a mine foreman and mine superintendent. (See *United States v. May*, Criminal No.: 5:12-cr-50) (Document 1).

otherwise offer information regarding mine inspectors and the alleged routine practice of giving advance notice of their arrival and inspection plans. (Document 46 at 4.) The Petitioner avers that Carrico was ineffective because he would not allow him to correct factual errors or omissions contained in the Presentence Investigation Report (PSR), a document which was used at his sentencing.[4] (*Id*. at 9.) Simply put, with respect to the claim of ineffective assistance of counsel, Petitioner states that "Carrico was ineffective in challenging the multitude of false facts in the [PSR], in the Plea Agreement and at the Sentencing hearing." (Document 51 at 2.)[5]

On October 17, 2013, Magistrate Judge VanDervort submitted his PF&R, wherein he recommends that this Court deny Petitioner relief under 28 U.S.C. § 2255, and remove this matter from the Court's docket. (Document 55 at 13-14.) As mentioned above, Petitioner timely submitted objections to the PF&R on November 4, 2013 (Document 58).[6]

## II. STANDARD OF REVIEW

This Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, the Court is not required to review, under a *de novo* or any other standard, the factual or

4 Specifically, the Petitioner alleges that there were unaddressed factual errors in the PSR with respect to the (1) alleged deactivation of methane monitoring equipment, (2) falsification of mine log books, and (3) the existence and frequency of advance warning regarding federal mine inspectors trips. (Document 46 at 9-12.)

5 The Court notes the Petitioner filed a *Motion to Supplement his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255* (Document 51) on September 11, 2013. He attached to that submission several civil cover sheets that indicate Shane Harvey and Pamela Harvey as attorneys. The Petitioner also filed a *Second Motion to Supplement his Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255* (Document 52) on October 2, 2013. He attached certain legal bills associated with his criminal case that were submitted to Massey and/or Alpha by Carrico.

6 The Petitioner attached several documents to his objections, including: (1) a document titled Addendum A which is a collection of newspaper and media documents that Petitioner feels Assistant United States Attorney Ruby (AUSA Ruby) disseminated; (2) Petitioner's affidavit totaling 3 pages; (3) his proffer agreement totaling 3 pages; (4) another email report; (5) correspondence from his attorney Carrico to AUSA Ruby; (6) a joint defense and confidentiality agreement Petitioner claims he signed, totaling 10 pages; (7) more civil cover sheets for unrelated cases; (8) a letter from Massey Energy with attached undertaking; and (9) an affidavit from David Hughart. (See Document 58 at 31-65)

legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this Court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982). When reviewing portions of the PF&R *de novo*, the Court will consider the fact that Petitioner is acting *pro se*, and his pleadings will be accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

## III. DISCUSSION

### *A. Magistrate Judge's PF&R*

The Magistrate Judge found that the Petitioner's motion should be denied on multiple grounds. First, the Magistrate Judge found that "it is not evident that Mr. Carrico had an actual conflict of interest and actively represented conflicting interests" and that "nothing in the record even remotely indicates that Mr. Carrico did so." (Document 55 at 8.) Regarding the ineffective assistance of counsel claim, Magistrate Judge VanDervort found that "Mr. Carrico skillfully managed [the Petitioner's] defense avoiding circumstances which would have potentially impacted him negatively and advocating for [the Petitioner] when it appeared it might have a positive impact." The Magistrate Judge noted that an example of the latter was Carrico's request for an *in camera* hearing during sentencing when discussions arose surrounding Petitioner's cooperation and acceptance of responsibility. (*Id*. at 9.) Succinctly put, "[n]othing in the record indicates that Mr. Carrico acted to benefit Massey, Alpha, or Mr. Blankenship at [the Petitioner's] expense. (*Id*. at 10.)

The Magistrate Judge found that not allowing the Petitioner to testify about advance notice of inspections was, again, done in his best interest, and that if Carrico had allowed him to testify on these matters, it might have exposed the Petitioner to perjury or obstruction of justice charges. (*Id*. at 11-13.) Further, regarding the "false information" that the District Court may have relied on, the Magistrate Judge believed such contention to be "frivolous in view of [the Petitioner's] acknowledgement under oath at his plea hearing of the truth of such matters" contained in his Rule 11 colloquy and Stipulation of Facts attached to the executed plea agreement. (*Id*. at 12-13.)

*B. Petitioner's Factual Objections*

The Petitioner makes several objections in his sixty-five (65) page submission, titled *Movant Gary May's Written Objections to Magistrate Judge's Proposed Findings and Recommendations* (Document 58), dated October 31, 2013.[7] Initially, the Petitioner takes issue with the entirety of the Magistrate Judge's PF&R, labeling it "grossly inaccurate, legally insufficient, and [failing] to address [his] alleged facts in his § 2255 motion." (*Id*. at 1.) The Court notes that most of Petitioner's objections center on alleged factual mischaracterizations, which essentially constitute a regurgitation of the original filings surrounding his § 2255 claim, as opposed to a challenge to either the cited legal bases or legal conclusions contained in the Magistrate Judge's PF&R. For ease of reference and clarity, the Court will address the factual objections together, and then address how, and whether, they affect Petitioner's § 2255 claim of ineffective assistance of counsel.

As mentioned above, the Petitioner's filing is littered with objections to alleged factual mischaracterizations and errors in the documents and proceedings leading up to his sentence, and

7 Included with Petitioner's objections is a *Motion to Expand Record*, pursuant to Fed. R. Civ. P. 7. (*See* Document 57.) Based on the Court's ruling herein, and reliance on certain documents referenced by the motion to expand, the motion is **GRANTED**.

subsequently relied upon in the Magistrate Judge's PF&R. The Petitioner first objects to the statement in the PF&R that he was a mine foreman and superintendent at UBB. (Document 58 at 1.) He states that the Federal Mine Safety and Health Administration (MSHA) mapped the UBB site as two separate mines, and that the explosion occurred in the North coal mine, while he worked in the South mine. (*Id*.) The Petitioner claims this fact is relevant because the same phrase was used by the Government repeatedly in filings with the Court, and that the PF&R again uses this inaccurate labeling. (*Id*.) The Petitioner also takes offense with the Magistrate Judge's "attempt[ ] to tie [him] to the 29 deaths" at UBB, and argues that this inaccuracy was previously used by the Government when arguing for a stiffer sentence above the guideline range. (*Id*. at 2.) The Petitioner argues that he brought this to the attention of his attorney, Carrico, but that the sentencing memorandum filed on his behalf lacked any "clarification of this key point." (*Id*.)

The Petitioner next objects to the PSR, specifically claiming that it "omits the heavy role of the federal inspectors in providing advance notice to the UBB mines" of their upcoming arrival and inspection sites, and arguing that, in fact, such "practice was the industry norm with the MSHA inspectors routinely giving advance notice both verbally and by telephone."[8] (Document 58 at 2.) The Petitioner believes that the omission was done in order to "place a higher level of blame upon [him]," and further supports the conclusion that Carrico was ineffective for "not providing a complete defense for him . . . ." (*Id*.) He repeatedly states that his attorney would respond to his disclosures with "you're not being charged with that, drop it," and that Assistant United States Attorney Steve Ruby actually coached him on what to say at his plea hearing. (*Id*. at 3.) The Petitioner is under the impression that his attorney was "complacent in the deceptive

8 The Court notes that the Petitioner mainly objects to the PSR and court documents used at his plea hearing and sentencing hearing. These objections are now directed to the PF&R, however, as the Magistrate Judge relied on and incorporated certain of those documents in his reasoning.

scheme Ruby concocted to withhold the whole truth from this court," and further challenges whether "the court still maintained subject matter jurisdiction to enter a valid order or judgment." (*Id*.)

The Petitioner attempts to use the fact that mine inspectors were at the UBB mine on average 1.23 times per day for the four months preceding the explosion as mitigation for his admitted acts of providing advance warning as reflected in the stipulation of facts attached to his plea agreement and contained in the information filed against him. (*Id*.) Now, in his objections, the Petitioner challenges the integrity of the Magistrate Judge, specifically claiming that "it was however the government, [Carrico,] and now the Proposed Findings, with its veiled threat of having [him] charged with wrong doing, which keeps avoiding the whole story." (*Id*. at 4.) He further states that to adopt the PF&R would "deny [him] due process rights to be sentenced on the basis of accurate information," and seemingly cites *United States v. Eschweiller*, 782 F.2d 1385 (7th Cir. 1986), for support. (*Id*.) (internal quotations omitted)

The Petitioner then extends a factual objection to the substance of the PSR because of its "recurring use of the plural version of the word books [ ] when there was only one book." (Document 58 at 5.) (internal quotations omitted). This objection relates to MSHA mentioning in a report that there were two sets of books at UBB, and the Petitioner believes that the presence of the plural of book in the PSR "inflat[es] his degree of culpability." He states that he "asked [Carrico] to remove the plural version of the word [book] yet [Carrico] never acted upon his request." (*Id*.) In the same vein, the Petitioner complains that Carrico "was ineffective as [the Petitioner] never got to tell the whole truth." (Document 58 at 5.) He states that the conspiracy was "inflated" and that the methane monitor issue and air ventilation redirection were exaggerated,

with some of the alleged acts not even rising to violations of federal laws and regulations. (*Id*. at 6.) The Petitioner "further objects to the Magistrate Judge not accepting [the] allegations in his § 2255 as true on which his claim is based," and claims that "the Information was thus legally insufficient" to ground his charges such that it did not reflect his true level of culpability. (*Id*. at 7.) In support of this contention, he cites *United States v. Pierce*. (*Id*.) 1997 U.S. Appx. LEXIS 22239 (4th Cir. 1997). The Petitioner asserts that when he spoke to Carrico about perceived inaccuracies in certain documents and about his fears that he would be charged and/or sentenced on erroneous information, he was told to not worry about it as he was not being charged with those acts. (Document 58 at 7-8.)

The Petitioner also objects to the Magistrate Judge's acceptance of the plea agreement, stipulation of facts and sentencing hearing documents because those documents, and now the PF&R, prevented him from having the "truth fully and fairly presented in his defense . . ." (*Id*. at 14.) He claims that the allegations of falsified log books and inappropriate water levels in the UBB mine, contained in the Information, were "perhaps the most grandiose of the erroneous facts used against [him] in the criminal proceedings." (*Id*. at 14-15) Petitioner claims that AUSA Ruby "gravely misled [the] court on this matter" because there is no "federal regulation" regarding keeping water levels below eighteen (18) inches, and that he never falsified log books because a co-worker never provided a specific water level to input in the log book. (*Id*. at 15-16.) When he tried to point this out to his attorney, Petitioner claims that he was, again, told that "you're not being charged with that . . ." (*Id*. at 16.) Petitioner alleges that his "constitutional right of due process and right to fair court proceedings" were violated when AUSA Ruby allegedly altered and

rewrote his proffered facts and federal regulations, and, moreover, that Carrico was ineffective because he willingly participated. (*Id*. at 16-17.)

The Court finds that all of the above objections represent primarily factual contentions, and none are directed to the law cited in the PF&R, or legal conclusions reached by the Magistrate Judge. Petitioner, himself, states that he "repeatedly argued with his attorney, Tim Carrico," about these misstated facts, but that Carrico ultimately decided not to address them in the sentencing memorandum.

While cases from the Seventh Circuit are not binding on this Court, the statements found in *Eschweiller* do not lend support, in any event, for the proposition Petitioner advances in his objections. With regard to due process rights enmeshed in criminal proceedings such as sentencing, the Seventh Circuit, in *Eschweiller*, stated that "in order to show a due process violation, the defendant must raise grave doubt as to the veracity of the information [contained in PSR] and show that the court relied on that false information in determining the sentence." *Eschweiller*, 782 F.2d at 1387. There, the court correctly noted that this standard need not be met when deciding whether resentencing is appropriate under Federal Rule of Criminal Procedure 32(c)(3)(d), but that a court must ask three key questions to comply with Rule 32: "(1) whether the defendant has had an opportunity to read the [PSR] report; (2) whether the defendant and defense counsel have discussed [the report]; and (3) whether he or she wishes to challenge any facts in the report." *Id*. at 1388 (citation omitted).

Here, a review of the record by the Magistrate Judge indicated that the sentencing judge indeed asked all three questions, and that the Petitioner answered the first two in the affirmative, and the last in the negative. (Document 55 at 13.) (*See also* related Criminal Case No.:

5:12-cr-50, Document 18 at 17-20; Document 43 at 3-4). Thus, this Court finds no support for the contention that the Petitioner was the victim of a concerted effort by the Government and his own attorney to deprive him of constitutionally protected due process rights, or that the Petitioner did not have an opportunity to address any perceived mischaracterizations contained in the PSR before the sentencing court.

Further, the Court notes that the holding in *United States v. Pierce* does not support the proposition Petitioner urges on the Court, specifically that a "court is to accept as true the allegations of defendant's § 2255 supporting claims." (Document 58 at 7.) The extensive record in this case, specifically the Information, the Rule 11 plea agreement and attached stipulation of facts, the plea colloquy and the sentencing hearing discredit any argument that the Court need accept Petitioner's allegations as true.

While statements in a Rule 11 plea colloquy may be overcome, per *United States v. Lemaster*, courts should look to the totality of the criminal proceedings, including sentencing, when determining whether a petitioner's § 2255 claims are "palpably incredible and patently frivolous or false." 403 F.3d 216 (4th Cir. 2005); See also *United States v. White*, 366 F.3d 291 (4th Cir. 2004). *Lemaster* involved a petitioner's attempt to overcome sworn statements made during a Rule 11 plea colloquy in which he waived his right to challenge his sentence on appeal and collateral attack. In affirming the lower court's denial of the petitioner's § 2255 claim and his request for an evidentiary hearing, the Fourth Circuit noted that "[i]n addition to his statements during the Rule 11 colloquy, [petitioner] reaffirmed his assent to the plea agreement five months later during his sentencing hearing."[9] *Id.* at 222. The court also noted that "a district court

9 Likewise, for these reasons, the petitioner was not entitled to an evidentiary hearing. *Lemaster*, 403 F.3d at 223. The same logic applies here, and Petitioner is not entitled to an evidentiary hearing.

should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict [Rule 11] sworn statements." *Id*.

In our case, the Magistrate Judge's use of "books" as opposed to "book" in relation to Petitioner's admission to altering mine records is of no consequence to a claim that the Court relied on inaccurate information or on a claim of ineffective assistance of counsel. The same applies to Petitioner's other objections to alleged factual inaccuracies contained in most of the documents underlying his Information, plea agreement and sentencing. Importantly, the Petitioner was presented with multiple opportunities to bring to the Court's attention, and to contest, any alleged mischaracterizations or factual inaccuracies contained in, or underpinning, the Information, PSR, or plea agreement and its attached stipulation of facts.

During the plea hearing, the Petitioner was repeatedly asked whether he agreed with the facts comprising the information, plea agreement and its attached stipulation of facts.[10] Under

---

10 The Court notes Petitioner's underlying criminal action, Case No 5:12-cr-50, and that Petitioner's civil case docket entries (5:13-cv-22417 pick right up where the criminal case ended. For example, Document 18 (of both dockets) transcribes the following:

> THE COURT: Mr. May, you've had the opportunity to thoroughly review this plea agreement with Mr. Carrico. Is that also correct?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Do you have any questions about the plea agreement?
>
> THE DEFENDANT: No.

(Document 18 at 6.) Additionally:

> THE COURT: And, Mr. May, you have reviewed the attached Exhibit A, the information, as well as Exhibit B, the Stipulation of Facts also. Is that correct?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Is that, in fact, your signature on the document, on the last page of the plea agreement, and on the last page of Plea Agreement Exhibit B which is the Stipulation of Facts?

oath, he indicated that he did. In response to inquiry from the Court, after AUSA Ruby described the evidence, witnesses and testimony the Government would present to prove the offense to which he was pleading guilty, the Petitioner indicated that AUSA Ruby's statements were substantially correct. (Document 18 at 19)

During sentencing, the Petitioner twice answered in the affirmative when asked if he had read the PSR and if he agreed it was factually correct, but now claims his attorney was ineffective for failing to follow his pre-hearing commands to challenge alleged mischaracterizations. The Petitioner must take some responsibility for his own responses, made under oath, during his plea and sentencing hearings. Indeed, the Petitioner's claims ring hollow, and the Court need not accept such allegations or claims as true when viewed against the extensive record in this case. Accordingly, the Petitioner's objections based on the Court's reliance on alleged factual inaccuracies contained in the PF&R are **OVERRULED**.

---

> THE DEFENDANT: Yes, Your Honor.
>
> . . .
>
> THE COURT: Any questions about it at all?
>
> THE DEFENDANT: No, Your Honor.

(Document 18 at 7.) Further, the Court notes:

> THE COURT: You've indicated your review [of the Information] Mr. May, but I just want to be clear on the record that you have, in fact, received a copy of the information that was filed against you.
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you've read that document. Is that also correct?
>
> THE DEFENDANT: Yes, Your Honor.

(Document 18 at 8-9.)

*C. Ineffective Assistance of Counsel & Conflict of Interest*

The Petitioner contends that his counsel had an actual conflict of interest that destroyed his ability to provide competent and effective representation during his criminal proceedings. "[T]he right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment. . . ." *Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 ()1988). "[T]he purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial." *Wheat*, 486 U.S. at 158-59. (internal quotations and citations omitted). The standard for a claim based on ineffective assistance of counsel is well settled. In *Strickland v. Washington*, the United States Supreme Court held that to succeed on such a claim, one must establish that his counsel's performance "fell below an objective standard of reasonableness" and as a result of this shortcoming, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. 668 at 669, 694 (1984).

Given this Court's findings above regarding the Petitioner's alleged factual inaccuracies, the Court finds no evidence that Mr. Carrico's performance fell below an objective standard of reasonableness. Moreover, even if one assumes *arguendo* that Petitioner meets this first prong, or that Carrico's performance was unreasonable for failing to object to certain alleged erroneous facts contained in the PSR, plea agreement, stipulation of facts, or Information (as described above), Petitioner cannot satisfy the requisite second prong that the end result would have been different but for his counsel's alleged shortcomings. The record supports the facts contained in the Magistrate Judge's PF&R as well as the Petitioner's conviction and guideline sentence.

Importantly, the Petitioner was asked during his plea hearing whether he was completely satisfied with the legal representation he had received from his counsel, Mr. Carrico, and, again, he replied in the affirmative. (Id. At 4)

This dialogue, the posture of the case, and counsel's ultimate acts convince the Court that any omission was done strategically, and not as a result of ineffective assistance. Simply put, Carrico's conduct is evidence of strategy, rather than incompetence, malfeasance or misfeasance. The Court will not second guess Carrico's tactical decisions as they do not appear unreasonable, but instead appear to be in the exercise of reasonable professional judgment. *Strickland*, 460 U.S. at 690. Thus, the Petitioner's objections to the PF&R, based on the claim that his counsel was ineffective as a result of his failure to point out factual inaccuracies, are **OVERRULED**.

The Petitioner claims that Carrico had a conflict of interest during his representation, and attaches excerpts of an email from Phil Monroe, corporate counsel for Massey and/or Alpha, to his attorney Carrico.[11] "I [Monroe] did speak with Tammy, and what we are going to do is have you [Carrico] represent [Petitioner]. Behind the scenes, Tammy will likely prepare most of the pleadings since they need to be consistent and have you review and sign off **if they are appropriate**." (Document 58 at 18) (emphasis added.) Despite signing a Joint Defense and Confidentiality Agreement (Document 58 at 43-65), as well as an Undertaking (Document 58 at 61-62), the Petitioner claims he was "unaware and never told by Carrico that Carrico was taking directions and orders from third persons pertaining to his case." (Document 58 at 18.)

Challenging the conclusions contained in the PF&R, the Petitioner asserts that he demonstrated that Carrico protected Massey and Alpha by preventing the Petitioner from telling

11 The Court notes that Petitioner also implicates Shane Harvey, counsel for Alpha Natural Resources and alleged husband to Tammy Harvey, counsel for Massey Energy and Don Blankenship, personally.

the whole story, and this resulted in an impairment of his own interests because offering his complete account would have necessarily lessened his culpability. (*Id*. at 19.) Further, the Petitioner claims that Carrico's representation of Hughart was an additional conflict of interest. While it is true that Carrico was retained to defend Hughart, who was also charged with conspiracy to defraud the United States government, his representation ended when he noted a conflict of interest to the court presiding in Hughart's case. (*See* Case No. 5:12-cr-220; Document 5 & 7.) Carrico ceased representation of Hughart before he entered a plea. (*Id*.)

"In order to establish ineffective assistance of counsel in a conflict of interest situation, a defendant who did not raise an objection at trial 'must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.' [*Cuyler v.*] *Sullivan,* 446 U.S. [290] at 348, 100 S.Ct. [1700] at 1708. Adverse effect cannot be presumed from the mere existence of a conflict of interest. *See Mickens v. Taylor,* 122 S.Ct. 1237, 1243–45, 152 L.Ed.2d 291 (2002)." *Rubin v. Gee,* 292 F.3d 396, 401 (4th Cir. 2002). The Fourth Circuit went on to say that "[i]f a defendant shows that a conflict of interest existed and that it adversely affected counsel's performance, prejudice will be presumed and the defendant need not demonstrate a reasonable probability that, but for the attorney's conflict of interest, the trial's outcome would have been different." *Id*. at 401-402 (citation omitted).

The Court agrees with the Magistrate Judge that it is not evident that the Petitioner's attorney had an actual conflict of interest, and if he did, it is equally unclear that Carrico acted in some way to protect or advance the interests of Massey and/or Alpha at the Petitioner's expense. (Document 55 at 8.) Similarly, the Court finds that, if there was an actual conflict of interest as it relates to Carrico's representation of Hughart, Carrico withdrew from that representation days

before Petitioner's plea hearing. (Document 58 at 25-27). Moreover, the Petitioner has failed to point to specific, concrete examples of how any conflict of interest adversely affected him. *See Strickland*, 466 U.S. 668 at 692 ("Prejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interests adversely affected his lawyer's performance.") (citations and quotations omitted). The insinuation that the Petitioner's attorney prevented him from testifying for fear that Massey or Alpha would be incriminated is without merit because, as shown above, the Petitioner was given multiple chances to tell the "whole story" to this Court. Likewise, any insinuation that Carrico was making the Petitioner the fall guy because of Massey and/or Alpha, or the ones allegedly paying the legal fees, is without merit in light of the applicable documents discussed above. For these reasons, the Petitioner's objections to the PF&R regarding his counsel's alleged conflict of interest are **OVERRULED**.

The Court has additionally considered whether to grant a certificate of appealability. *See* 28 U.S.C. § 2253(c). A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). The standard is satisfied only upon a showing that reasonable jurists would find that any assessment of the constitutional claims by this Court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. *Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683-84 (4th Cir. 2001). The Court concludes that the governing standard is not satisfied in this instance. Accordingly, the Court **DENIES** a certificate of appealability.

**CONCLUSION**

Wherefore, based on the findings herein, the Court does hereby **ORDER** that the Magistrate Judge's Proposed Findings and Recommendation (Document 55) dismissing Petitioner's *Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255* (Document 46) be **ADOPTED,** that Petitioner' objections to the PF&R (Document 58) be **OVERRULED**, and that the Petitioner's *Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. §2255* (Document 46) be **DISMISSED WITH PREJUDICE**. The Court further **ORDERS** that the *Motion to Expand Record* (Document 57) be **GRANTED**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to Magistrate Judge VanDervort, to counsel of record, and to any unrepresented party.

ENTER: February 3, 2014

Irene C. Berger

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA